IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANDY LARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-cv-452-WHA |
| | ) | (WO) |
| ALABAMA ALCOHOLIC BEVERAGE | ) | |
| CONTROL BOARD (STATE OF | ) | |
| ALABAMA), CHIEF JEFF ROGERS, in his | ) | |
| individual capacity, and JEAN | ) | |
| TURNER, in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

This case is before the court on a Partial Motion to Dismiss Retaliation Claims (Doc. #36) filed on September 21, 2012 by Defendants Alabama Alcoholic Beverage Control Board ("ABC Board"), Jeff Rogers ("Rogers"), Jean Turner ("Turner").

The Plaintiff, Andy Lard, filed a Complaint (Doc. #1) in this court on May 24, 2012, against the ABC Board, Rogers, and Stan Goolsby ("Goolsby").  The Complaint raised various claims: Count I – race discrimination and racial harassment against the ABC Board under Title VII of the Civil Rights Act of 1991; Count II – retaliation against the ABC Board under Title VII; Count III – race discrimination and racial harassment against Rogers and Goolsby under the Fourteenth Amendment and 42 U.S.C. § 1981 through § 1983; and Count IV – retaliation against Rogers and Goolsby under 42 U.S.C. § 1981 through § 1983.  The Plaintiff voluntarily dismissed Stan Goolsby as a Defendant.  The court dismissed without prejudice the Plaintiff's retaliation

claims against the ABC Board and Rogers, giving the Plaintiff extended time to file an Amended

Complaint to allege additional facts as to that claim, and also authorized the Amended Complaint

to allege additional facts as to the hostile environment claim in Count I (Doc. #23).  The Plaintiff

filed an Amended Complaint (Doc. #28) on August 29, 2012, after which the court denied the

earlier Partial Motion to Dismiss as to the hostile environment claim against the ABC Board in

Count I.  The Plaintiff then filed a Second Amended Complaint (Doc. #33) on September 4,

2012, which pled additional facts as to the retaliation claims, added a harassment claim to Count

II, and added Turner as a Defendant in Counts III and IV.

 The Defendants now move to dismiss the retaliation claims against them in Counts II and

IV and raise various grounds in support of their contention.  The Plaintiffs filed a Response to

Defendants' Partial Motion to Dismiss (Doc. #41) on October 15, 2012.

 For reasons to be discussed, the Motion to Dismiss is due to be DENIED in part and

GRANTED in part.

## II. <u>MOTION TO DISMISS STANDARD</u>

 The court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*,

467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5

F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of pleading, the court is guided

by a two-prong approach: one, the court is not bound to accept conclusory statements of the

elements of a cause of action and, two, where there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to entitlement

to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "[A] plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).   To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570.   The factual allegations  "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III. <u>FACTS</u>

The factual allegations of the Plaintiff's Second Amended Complaint are as follows: The Plaintiff, Andy Lard ("Lard"), is an African-American who had been employed by the ABC Board.  He began working for the ABC Board in August 1999 as an agent.  After several years of employment, Lard began working in the undercover drug unit.  In 2004, he was promoted to ABC Enforcement Agent II (sergeant).  In January 2006, he was promoted to ABC Enforcement Agent III (lieutenant).

Lard alleges that Defendant Jeff Rogers and Vance Patton took over as his supervisors, and at that point, he began to experience race discrimination.  Lard states that no sergeant was assigned to the district office to replace him when he became a lieutenant, which meant that he was on call all of the time.  He states that he repeatedly asked Rogers to assign a sergeant to the district, but the requests were denied.  Lard also states that his district was the last one to receive equipment when equipment was provided to the districts.  He finally states that his requests for necessary items were routinely denied.

In April 2010, Kesia Perry ("Perry"), an African-American agent whom Lard was dating, complained to Rogers that a pay disparity she had noticed was race discrimination.  After she

complained, Perry was disciplined for alleged misuse of state property, and she observed that she was being watched by ABC Board agents.  Other African-American agents were monitored with GPS tracking devices.  Rogers questioned Perry about her and Lard's relationship.  In late June 2010,[1] Rogers ordered other ABC Board agents to place a GPS tracking device on Lard's car. Lard states that he was subjected to scrutiny not experienced by white officers.

On August 4, 2010, Vance Patton demanded that Lard resign for stealing time and misusing a state vehicle.  Lard alleges that when he refused to resign, he was falsely accused of stealing money from the evidence locker.  Rogers terminated Lard on August 30, 2010.  After his termination, Lard was publicly arrested and taken to the Clarke County Jail.  Lard states that white employees were not disciplined or terminated for criminal conduct.

## IV. <u>DISCUSSION</u>

Count II and Count IV contain claims of retaliation. Count II is asserted against the ABC Board pursuant to Title VII of the Civil Rights Act, and Count IV is asserted against Rogers and Turner pursuant to 42 U.S.C. § 1981.[2]  A retaliation claim requires a showing (1) that the plaintiff engaged in a statutorily protected activity; (2) that he suffered a materially adverse employment action; and (3) that there is a causal relation between the two events.  *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008).  The first element is established if the plaintiff shows that he opposed an unlawful employment practice he reasonably believed occurred.  *Bigge*

---

[1] Lard's Second Amended Complaint states that Lard's vehicle was monitored in late June 2011.  The court assumes that Lard intended for this date to be June 2010 because the surrounding occurrences took place from April to August, 2010.

[2] Title VII and § 1981 have the same requirements of proof and analytical framework. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002).

4

*v. Albertsons, Inc.*, 894 F.2d 1497, 1501 (11th Cir. 1990).

The Defendants' main argument is that Lard did not allege sufficient facts to show he engaged in a protected activity by opposing unlawful employment practices, but merely alleged various acts of discrimination against him.  In addition to arguing that his refusal to accept a pattern of acts of discrimination in treating him differently from white employees constitutes opposition, Lard contends specifically that his refusal to resign his employment when ordered to do so by a white officer and his girlfriend Kesia Perry's complaint regarding race discrimination constitute opposition to an unlawful employment practice, which satisfies the first prong of the prima facie retaliation case.

<u>Refusal to Accept Acts of Discrimination</u>

Lard's allegations of repeated requests for things which he did not receive but which were given to white employees, go to his claims of racial discrimination but, in the absence of allegations that he specifically made complaints that this was based on his race, do not allege opposition.  *See Gray v. City of Montgomery*, 756 F. Supp. 2d 1339, 1349 (M.D. Ala. 2010) (citing *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001).  Lard has cited numerous cases concerning vicarious liability for acts of supervisors and retaliation for refusal to accept discriminatory acts, such as sexual advances, none of which are analogous to the facts of this case so as to require discussion.

<u>Lard's Refusal to Resign</u>

Lard specifically contends that his refusal to resign when ordered to do so was an act of opposition which constitutes protected activity.  He cites *Crawford v. Metro. Gov't of Nashville & Davidson Co.*, 555 U.S. 271 (2009) to support his argument.  He points to the Court's

statement that, "we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Id.* at 277.

In *Crawford*, a human resources officer of the employer asked Crawford whether she had witnessed sexually harassing behavior on the part of another employee, and Crawford answered that she had.  Crawford was fired soon after this incident.  She filed suit, claiming that her former employer retaliated against her for giving an account of another employee's sexual harassment. The Supreme Court noted that the ordinary meaning of "oppose"—"to resist or antagonize"—described Crawford's action against her employer.  *Id.* at 276 (citing Webster's New Int'l Dictionary 1710 (2d ed. 1958)).  The Court held that Crawford's communication to her employer that she believed the employer had engaged in a form of employment discrimination is sufficiently antagonistic to satisfy the opposition clause.  *Id.*

Lard argues that his refusal to comply with his employer's allegedly discriminatory act of ordering him to resign constitutes opposition under the *Crawford* definition.  It would be a substantial stretch of the language in *Crawford* to hold that it also applied to Lard's refusal to resign, when that and the termination itself are discrete acts of racial discrimination alleged, and this court will not do so.  There is no allegation that Lard complained that his being directed to resign was an act of racial discrimination before he was terminated.  In fact, the Second Amended Complaint (¶ 41) merely says that "[t]he Plaintiff refused to resign since he had not done anything wrong."

<u>Perry's Complaint of Race Discrimination</u>

Lard's other argument is that he experienced third-party retaliation after his girlfriend

and co-worker Kesia Perry ("Perry") complained  to Rogers of race discrimination.  He alleges that after Perry complained to Rogers that a pay disparity between white and African-American employees was race discrimination, Rogers ordered that GPS devices be placed on several African-American agents' vehicles, including Lard's.  Lard also alleges that Rogers questioned Perry about her relationship with Lard, and shortly afterward Lard was ordered to resign.  Rogers terminated Lard's employment less than a month later.

In *Thompson v. North American Stainless, LP*, the Supreme Court held that an employer's firing of an employee after the employee's fiancé and co-worker filed a discrimination complaint constituted unlawful retaliation.  *Thompson*, 131 S.Ct. 863, 867–68 (2011).  "Title VII's antiretaliation provision should be construed to cover a broad range of employer conduct," which includes employer retaliation against someone in a close relationship with an employee engaged in protected conduct.  *Id.* at 868 (citing *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). The Court, however, declined to identify a fixed class of relationships for which third-party reprisals would trigger unlawful retaliation.  *See Thompson*, 131 S.Ct. at 868.  Recognizing the potentially difficult line-drawing problems regarding the types of relationships protected, the Court stated that "the significance of any given act of retaliation will often depend on the particular circumstances" of each case.  *Id.*  (quoting *Burlington*, 548 U.S. at 69).

As alleged in the Second Amended Complaint, Perry's complaint constitutes protected activity, which satisfies the first prong of a retaliation prima facie case.  Although Perry and Lard were not engaged at the time of the alleged retaliation, *Thompson* allows for Lard's retaliation claims to go forward against Rogers past the pleading stage.  *See Thompson*, 131 S.Ct. at 868

7

("We expect that firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize.")  Therefore, Lard and Perry's relationship provides a basis for the first prong of Lard's third-party retaliation claim against Rogers, at least at this stage of the proceedings.  The matter may be revisited by proper motion after factual development.

As to Turner, however, there are no allegations of actions by her related to Perry's complaint of racial discrimination which could subject her to a third-party retaliation claim, and this claim will be dismissed as to her.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, it is hereby ORDERED that the Partial Motion to Dismiss (Doc. #36) is GRANTED and DENIED as follows:

1.  The Motion is GRANTED in favor of Jean Turner.

2.  The Motion is DENIED as to the ABC Board and Jeff Rogers based on third-party retaliation, but GRANTED as to the contention that Plaintiff's refusal to resign constituted protected activity.

3.  This case will now go forward on Count I; on Count II against the ABC Board based on Title VII, as limited above; on Count III against Rogers and Turner; and on Count IV against Rogers as limited above.

Done this 28th day of November, 2012.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE